IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

BETTY J. PATRICK TYLER,

    Plaintiff,

v.                          No. 02-2137 B/V

FEDERAL EXPRESS CORPORATION,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff, Betty J. Patrick Tyler brought this action on February 28, 2002 against Defendant Federal Express Corporation ("Fed Ex"), her former employer, alleging discrimination on the basis of disability and retaliation in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq.; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), et seq.; and the Tennessee Human Rights Act ("THRA"), codified at Tennessee Code Annotated § 4-21-101, et seq. Before the Court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Defendant's motion is GRANTED.

### UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted. Tyler began working for Fed Ex on April 22, 1991 as a cargo handler. (Def.'s Mot. Summ. J. ("Def.'s Mot.") Decl. Kim Gillum ("Gillum Decl.") ¶ 4; Pl.'s Resp. Opp. Def.'s Mot. Summ. J. ("Pl.'s Resp.") Ex. A Aff. Betty J. Patrick Tyler ("Tyler Aff.") ¶ 1.) In February 1994, Plaintiff was promoted to the position of Manager of Hub Operations for the Memphis, Tennessee hub, the position in which she remained



until her termination by Fed Ex in January 2002. (Tyler Aff. ¶ 1.) In this position, Plaintiff was part of the night management team and, accordingly, worked the night shift. (Gillum Decl. ¶ 4.) Plaintiff's job duties included managerial and administrative functions. (See Pl.'s Resp. Dep. Betty J. Patrick Tyler ("Tyler Dep.") Ex. 14.)

Beginning in 1994 and continuing until her termination, Tyler sought and received treatment for depression, stress, and anxiety from People Help, a program offered by Fed Ex. (Tyler Aff. ¶ 2.) Plaintiff managed her condition while at Fed Ex with therapy, medication, and leaves of absence. (Id.) She also suffered from physical ailments, some of which were related to on the job injuries. Plaintiff alleges that she was physically injured while at the workplace on several occasions, including a physical attack on a transport bus as well as an on-the-job back injury in April 2000 which was not recorded by management. (Id. ¶ 3.)

Most significantly to her claims in the instant case, on March 27, 2001, Plaintiff was injured on the job when a tug rear-ended the tug in which Tyler was a passenger. (Id.) As a result of this incident, Plaintiff suffered a lower back injury for which she received treatment by her physician, Dr. Lynn Greene. (Id. at 3.) On October 30, 2001, Tim Liley, Plaintiff's senior manager at Fed Ex at the time, requested that Plaintiff report to his office. ( Id. ¶ 4.) Liley informed Tyler that Eddie Lowe, the managing director of the department to whom Plaintiff's senior managers reported, was looking for her and requested that Plaintiff return to "key" her March 27th injury into the system. (Pl.'s Resp. Tyler Dep. at 117-118.) Liley did not request that Plaintiff return to her work responsibilities, but rather, that she be "visibly present" at work. (Id. at 118.) Specifically, Liley suggested that Plaintiff "just sit around, do what you can." (Id. at 117.) Tyler reported to Liley as requested with a note from Dr. Greene that she had not been released to work. ( Id. ) For the following several days, Plaintiff was present at work, though not engaged in her employment

2

responsibilities.[1] (Id. at 117-19.)

On April 26, 2001, Plaintiff submitted an application for a job change to a day shift position. (Tyler Aff. ¶ 5; Pl.'s Resp. Dep. Christopher T. Liley ("Liley Dep.") Ex. 3.) Despite a recommendation for the position from her manager, Liley, the application was denied. (Tyler Aff. ¶ 5.) Fed Ex had previously denied an application for a change in position submitted by Plaintiff on July 3, 1998. This earlier denial was allegedly due to Liley's concerns regarding the effect of the change given Plaintiff's then recent return from a leave of absence for stress. (Liley Dep. Ex 1.)

On May 15, 2001, Plaintiff filed a charge (Charge No. 150-A1-0948) with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination during the period of February 1, 2001 through March 1, 2001 based on retaliation for "removal of her desk area, unwarranted and unequal discipline, an unfounded allegation that she had been terminated and replaced and denial of the right to drag and bag freight."[2] (Am. Compl. ¶ 14; Pl.'s Resp. Tyler Dep. Ex 16.) Plaintiff stated in her charge that she believed that these actions were taken in retaliation for a previous charge filed against Fed Ex with the EEOC.[3] (Pl.'s Resp. Tyler Dep. Ex.16.)

On June 1, 2001, an interoffice memorandum was sent to Eddie Lowe, the director of Tyler's department, notifying him of Plaintiff's recent EEOC charge. (Pl.'s Resp. Ex. B.) On that same day, Claudia Phillips, Tyler's senior manager at the time, advised Plaintiff that she would be issued a Performance Reminder for problems which arose during an earlier leave of absence.[4] (Id. ¶ 6.)

---

[1] The Court notes that Plaintiff maintains that a requirement that she be physically present at work is equivalent to "working." (Pl.'s Resp. at 9.)

[2] The EEOC issued a right to sue letter for Charge No. 250-A1-0948 on August 14, 2001.

[3] The parties have not submitted any information regarding this prior EEOC complaint.

[4] A Performance Reminder is a disciplinary action for Fed Ex employees. While a single Performance Reminder does not equate with any reduction in pay or benefits, Plaintiff alleges that disciplinary actions may be considered as a factor in job change application determinations. (Tyler Aff. ¶

3

Specifically, Phillips alleged that because of Plaintiff's failure to monitor the attendance and pay issues of her employees, one-third of the employees under her control were overpaid. (Id.; Pl.'s Resp. Tyler Dep. Ex. 3.) Plaintiff was formally issued the Performance Reminder on June 7, 2001. (Pl.'s Resp. Tyler Dep. Ex. 3.) Tyler maintains that the action was unjust because she was on a leave of absence from work from September 12, 2000 until November 13, 2000, the period in which these oversights occurred. (Id. at 10.) Because a covering manager was responsible for the performance of her area in her absence and because she "left specific directives for the peer manager to precede [her] to address critical items," Plaintiff believed that the disciplinary action was unwarranted. (Pl.'s Resp. Liley Dep. at 30; Tyler Dep. at 107-08.) In response, Plaintiff filed an employee grievance under the Guaranteed Fair Treatment Policy ("GFTP"), Fed Ex's internal employee grievance program, alleging harassment, retaliation and unjust disciplinary action.[5] (Pl.'s Resp. Tyler Dep. Ex. 22.) In her grievance complaint, Plaintiff stated that she was harassed because of "past incidents," including an assault in the manager's parking lot; requesting accommodations during pregnancy; and "always creating and performing on high profile projects." (Id. at Employee Statement Form 1.) In addition to the disciplinary action, Plaintiff cited management's interference in her direction of her operation as evidence of the alleged harassment she suffered during this period. (Id. at Employee Statement Form 1-2.)

At or about this time, Lowe requested to speak with Plaintiff during her shift to inquire as

---

6.) Further, the receipt of three or more Performance Reminders or warning letters within any one twelve month period is grounds for termination. (Gillum Decl. ¶ 10.)

[5] As part of the GFTP, an employee who "in good faith" believes that the receipt of a Performance Reminder or other adverse action was unfair, may seek review of the decision within five days of its issuance. (Gillum Decl. ¶ 8; Def.'s Mot. Decl. Nicole L. Gempler Supp. Def.'s Mot. Summ. J. Ex. 1("Def.'s Mot. Tyler Dep.") Ex. 3.)

to whether she had filed an EEOC or a GFTP complaint against him.[6] (Def.'s Mot. Tyler Dep. at 142.) Plaintiff alleges that Lowe informed her "that management feels that [she is] a problem" but that she had nothing to worry about if she did her job. (Id. at 138.)

On or about June 7, 2001, the date she received written notice of the Performance Reminder, Plaintiff sought "emergency treatment" from Dr. Daniel Boyd, a psychiatrist who was treating Plaintiff for depression, and ceased working because of her condition. (Tyler Aff. ¶ 7.) On June 11, 2001, Plaintiff submitted to Fed Ex a letter from Dr. Boyd indicating that "because of a medical illness, it is in [his] opinion that [Plaintiff] should be off work beginning today until further notice." (Def.'s Mot. Tyler Dep. Ex 4.) Subsequently, on June 26, 2001, Plaintiff was placed on an unpaid medical leave of absence pending the determination of her application for disability benefits from Fed Ex. (Tyler Aff. ¶ 8.)

During this time, on June 11, 2001, Plaintiff filed an additional charge (Charge No. 250-A1-1017) with the EEOC, alleging retaliation occurring on or about April 8, 200,1 and again on June 8, 2001, in the form of "verbal and written write-ups."[7] (Def.'s Mot. Tyler Dep. Ex. 15.) The parties have not provided any documentation of disciplinary actions other than the Performance Reminder which was issued to Plaintiff on or about June 7, 2001.

Kemper National Services, the third-party administrator of Fed-Ex's short term disability

---

[6] Tyler was unable to recall the date of this conversation and has offered conflicting accounts regarding the charge to which the conversation related. She first alleged that the conversation related to her filing of an internal grievance specifically naming Lowe. See Tyler Dep. at 110 (alleging that Lowe inquired as to whether Plaintiff had filed a "[Guaranteed Fair Treatment complaint] . . . and an EEO complaint against him, which [she had]."). Plaintiff did not name Lowe in any internal grievance until June 2001. However, Plaintiff later alleged that the conversation related to an external EEOC charge. See Pl.'s Resp. Tyler Dep. at 140. None of Plaintiff's EEOC charges specifically name Lowe.

[7] A right to sue letter was issued by the EEOC on Charge No. 250-A1-1017 on August 14, 2001.

5

plan,[8] denied Plaintiff's request for benefits on August 9, 2001.[9] (Gempler Decl. Ex. 7.) In making its determination, Kemper reviewed submissions from Dr. Boyd regarding Plaintiff's mental health as well as from Dr. Richie regarding Plaintiff's diagnosis of fibromyosis and her complaints of muscle spasms and aches. (Id.) Kemper concluded that the documentation submitted in support of her claim did not "reveal any significant loss of function or mobility or strength to the severity that would prevent [her] from performing in a sedentary position." (Id.)

Plaintiff, at Defendant's request, reported to work on September 7, 2001 and presented a release from Dr. Boyd indicating that she was approved for the return and requesting that she be transferred to a day shift position as an accommodation for her depression.[10] (Def.'s Mot. Tyler Dep. Ex. 6.) No other accommodations were requested.[11] (Id. at 153.) Plaintiff did not, however, return to her employment responsibilities at that time due to medical reasons. (Id. at Ex. 7; Pl. Resp. at 6.) Because Plaintiff's doctor had approved her return, she was placed on unauthorized leave. (Def.'s Mot. Tyler Dep. Ex. 7.) On September 12, 2001, Fred Jacobs, Plaintiff's senior manager at the time,

---

[8] Plaintiff disputes that Kemper National Services is the "third-party administrator" of Fed Ex's disability plan. See Pl.'s Resp at 11 (noting that the referenced denial letters state that "Kemper National Services is not the Plan Administrator and does not insure benefits under the Plan."). However, Plaintiff does not dispute that Kemper reviewed her claim and denied her eligibility for benefits under the Plan.

[9] The August 9, 2001 letter incorrectly states that Plaintiff claimed benefits beginning April 26, 2001. (Gempler Decl. Ex. 7.) Kemper subsequently issued a "corrected denial letter" on October 4, 2001 noting that Plaintiff claimed benefits beginning June 26, 2001 but denying the request on the same basis. (Gempler Decl. Ex. 8.)

[10] Dr. Boyd's letter stated in its entirety "Ms. Tyler is approved to return to work Friday 9/7/01. Please put onDay [sic] Shift because of her mood disorder (depression)." (Def.'s Mot. Tyler Dep. Ex. 6.)

[11] Plaintiff alleges that Fred Jacobs, then acting as Tyler's senior manager, advised her that he had no intention of accommodating her request and indicated that he would voluntarily resign her if she choose not to return to work. (Def.'s Mot. Tyler Dep. at 49.) Defendants dispute this fact, but argue that Fed Ex's subsequent efforts to accommodate Plaintiff's request for a change to the day shift negate the materiality of Jacob's alleged statements. (Def.'s Mot. at 5.) Plaintiff maintains that the existence of this fact is material to her claims of retaliation, hostile work environment and failure to accommodate. (Pl.'s Resp. at 12, FN 1.)

contacted Plaintiff to inform her that, in order to maintain her employment with Fed Ex, she must return to her assigned shift on September 14, 2001. In addition, the letter acknowledged Plaintiff's request for a transfer to the day shift and advised her to complete and return an enclosed accommodations letter, admonishing her that failure to return the letter would result in the denial of her request. (Id.) It is undisputed that Plaintiff did not return the requested letter at any time. However, at Plaintiff's request, Dr. Boyd forwarded a letter to Fed Ex indicating that Plaintiff should "remain off work for psychiatric reasons until further notice." (Id. at Ex. 8.) Because Dr. Boyd's letter was not initially received by personnel involved with the accommodations process, Fed Ex was not aware that Plaintiff responded to their request until after the September 14, 2001 deadline. Accordingly, on September 17, 2001, Fred Jacob issued a voluntary resignation letter on the grounds that Plaintiff failed to return the accommodations form or return to work as specified in the September 12, 2001 letter. Tyler subsequently filed an additional complaint with the EEOC (Charge No. 250-A1-1439) alleging termination based on retaliation.[12] (Id. at Ex. 17.)

Upon learning of Dr. Boyd's September 13, 2001 letter, Fed Ex rescinded the termination. (Pl.'s Resp. Tyler Dep. Ex. 10.) However, because Dr. Boyd did not release Plaintiff to work, she remained on a leave of absence. On September 25, 2001 Fed Ex notified Tyler that, because Kemper National Services determined that there were no significant objective medical findings to substantiate her medical leave of absence, her absence would be changed from medical to personal leave. (Id. at Ex. 10.) The Fed Ex "People Manual" in effect in September 2001 provided that an employee who either fails to produce evidence of a short or long term disability, or submits information that does not support such a finding, is placed on a personal leave of absence and

---

[12] The EEOC issued a right to sue letter on Charge No. 250-A1-1439 on November 30, 2001. (Def.'s Mot. Tyler Dep. Ex 17.)

7

permitted to compete for any open positions within the company for a period of ninety days.[13] (Gillum Decl. Ex A Table 2.) If, at the end of that period, the employee has not obtained a position, their employment is terminated. (Id.) On January 2, 2002, ninety-nine days after Plaintiff received notice of this policy, Fed Ex terminated Tyler's employment. (Def.'s Mot. Tyler Dep. Ex. 11.) It is undisputed that Tyler did not apply for or secure any alternative position within Fed Ex during this period.[14] (Id.)

Following her termination, Plaintiff filed EEOC Charge No. 250-A2-00393 alleging retaliation on the basis of denial of short and long term disability benefits and termination. (Id. at Ex. 18). Tyler filed an additional charge (Charge No. 250-A2-01088) on June 11, 2002 to supplement her prior complaints alleging that she was denied reasonable accommodations for her disability and that her job was terminated because of her disability and in retaliation for her prior EEOC complaints.[15] (Am. Compl. Ex. A.) Plaintiff filed the instant action pro se on February 28, 2002 seeking equitable relief in the form of back pay, benefits, and injunctive relief; compensatory damages; and reasonable attorney's fees and costs.   Six days later, on March 6, 2002, Plaintiff voluntarily filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Tennessee. It is undisputed that Tyler

---

[13] Plaintiff does not dispute the existence and her notification of this policy. However, she claims that this is not the "normal Fed Ex procedure." Rather, Tyler contends, based on the experience of Tom Liley, that employees need only request a change in position after which their supervisor completes the paperwork and locates a new position. (Liley Dep. at 11; Pl.'s Resp. at 12.); see also Pl.'s Resp. Tyler Dep. at 43 (alleging that a Fed Ex personnel representative advised Tyler she need only request a change to the day shift in response to her inquiry regarding the procedures required to transfer.)

[14] However, Plaintiff alleges that she contacted Fed Ex in a letter dated November 26, 2001 to request assistance in phasing back into work. (Pl.'s Resp. Ex. G.) However, she has not provided any information regarding the result of this communication or any specific attempt to secure a position during the period in question.

[15] The EEOC issued right to sue letters for these complaints on January 16, 2002, and February 26, 2003, respectively.

did not originally disclose this lawsuit as an asset in those proceedings.

Tyler filed applications for disability insurance benefits and supplemental security income payments with the Social Security Administration on September 4, 2001. (Pl.'s Resp. Ex. F.) Both applications were initially denied. (Id.) However, on December 10, 2002, the Social Security Administration issued a finding that Tyler suffered from severe depressive disorder and fibromyalgia and that, based on the severity of these impairments, she was disabled, defined as "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." (Id.; 42 U.S.C.A. § 1382(c)). On the basis of this finding, the Administrative Law Judge ("ALJ") determined that Tyler was entitled to disability insurance benefits and supplemental security income for a period of disability commencing June 7, 2001. (Pl.'s Resp. Ex. F.) The ALJ further recommended that, because the claimant's condition may improve, a medical review be conducted within two years of the decision. (Id.)[16]

## STANDARD OF REVIEW

Rule 56(c) provides that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc, 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

---

[16] The parties have not provided the Court with information regarding the outcome of this medical review, which should have occurred in 2004.

U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S.Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48, 106 S.Ct. at 2510 (emphasis in original). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

### I. Judicial Estoppel

The Defendant argues that Tyler's claim is barred by the doctrine of judicial estoppel

10

because she failed to disclose the instant claims in her Chapter 13 bankruptcy proceeding. Plaintiff claims that judicial estoppel is not appropriate because her original non-disclosure was inadvertent and because she has now taken steps to include her claims against the Defendant in her bankruptcy filings.

Under the equitable doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . ." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895); see also Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50, 121 S.Ct. at 1814 (internal citations and quotation marks omitted). Parties should be prevented from abusing the process through "cynical gamesmanship," and "playing fast and loose with the courts." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002). However, the Sixth Circuit has instructed that the doctrine "should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement." Eubanks, 385 F.3d at 897 (citing Teledyne Indus., Inc. v. NLRB, 911 F.2d 1214, 1218 (6th Cir. 1990)) (internal quotation marks omitted). This Circuit has held that "judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." Browning, 283 F.3d at 775 (quoting Teledyne Indus., Inc., 911 F.2d at 1218) (internal quotation marks omitted).

11

Both factors established in Browning are present here. Tyler filed the instant action on February 28, 2002 and six days later, on March 6, 2002, commenced voluntary bankruptcy proceedings in the Western District of Tennessee. Pursuant to § 521 of the Bankruptcy Code, "[a] debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (citing 11 U.S.C. § 521(1)); see also In re Pier, 310 B.R. 347, 357 (N.D. Ohio 2004). The purpose of the disclosure filings "is to permit the court, the trustee, and the creditors to evaluate the debtor['s] financial condition at the date of bankruptcy and ascertain what assets may be available for distribution to creditors." In re Superior Crewboats, Inc., 374 F.3d 330, 333 (5th Cir. 2004). "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend [her] financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system." Burnes, 291 F.3d at 1286 (internal citations and quotation marks omitted). "It is well settled that a cause of action is an asset that must be scheduled under § 521(1)." Lewis v. Weyerhaeuser Co., No. 04-5675, 2005 U.S. App. LEXIS 13598, at * 11 (6th Cir. July 6, 2005). Plaintiff's overt act of submitting a claim to the bankruptcy court in which she failed to disclose the instant action clearly establishes the first factor in the application of judicial estoppel. See Id. at *15 (noting that the Sixth Circuit has previously determined that "pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel"). Further, the bankruptcy court's approval on July 18, 2002 of Plaintiff's Chapter 13 bankruptcy plan which omitted the instant action demonstrates that court's reliance on Plaintiff's contrary position and thus, satisfies the second Browning factor. See Id. (citing Reynolds v. Commissioner, 861 F.2d

12

469, 473 (6th Cir. 1988) ("When a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position.")).

In response to Defendant's motion, Plaintiff maintains that, at most, the omission constitutes mere inadvertence, and that she had no intention of defrauding the bankruptcy court. In Browning, the Sixth Circuit followed the lead of other circuits in concluding, in a case of first impression, that "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." Browning, 283 F.3d at 776. Inadvertence may be found (1) "where the debtor lacks knowledge of the factual basis of the undisclosed claims" and (2) "where the debtor has no motive for concealment." Id. In cases involving judicial estoppel and the omission of assets in a bankruptcy case, it has been held that intentional manipulation, as opposed to inadvertence, may be inferred from the record where these factors have been established. See Burnes, 291 F.3d at 1287 (collecting cases).

Because Plaintiff instituted the instant suit less than one week before she filed for bankruptcy, "it cannot be disputed that [s]he had knowledge of this discrimination claim at the time [s]he filed [her] bankruptcy petition." Brown v. Brock, No. 5:04CV339DF, 2005 WL 1429756, at * 2 (M.D. Ga. June 13, 2005). Thus, in determining whether Plaintiff's omission was inadvertent, the Court is left with the question of whether there was a motive on Tyler's part to conceal the claim from the bankruptcy court. "Whether or not the debtor will receive a "windfall" as a result of his failure to disclose a cause of action is a significant factor in this inquiry into a debtor's motive." Smith v. Rosenthal Collins Group, LLC, No. 03-2360, 2005 WL 2210208, *5 (W.D.Tenn. Sept. 10, 2005) (citing Browning, 283 F.3d at 776).

The timeline relating to this determination is as follows. Tyler filed her original complaint pro se seeking $53 million in damages on February 28, 2002. (Compl. ¶ 10 p.3.) She subsequently filed her petition for bankruptcy, with the assistance of counsel, less than one week later. Tyler obtained counsel in the instant action on June 12, 2002 and filed a corrected amended complaint on June 25, 2002 seeking compensatory damages in the amount of $300,000. The bankruptcy court issued its order confirming Tyler's plan but omitting her claims in this action on July 18, 2002. The Defendant filed its motion for summary judgment on the grounds, among others, of judicial estoppel, on January 12, 2005. In her response to Defendant's motion, filed on February 14, 2005, Plaintiff stated that the omission was due to inadvertence and claimed that, as of the filing of her response, she had contacted her attorney for the bankruptcy proceeding and "is working to ensure that her bankruptcy petition and schedules are properly amended to include this lawsuit." (Pl.'s Mem. Opp. Def.'s Mot. Summ. J. at 18.) On April 8, 2005 Tyler filed a motion to amend her bankruptcy filings which was granted on May 13, 2005. Because Plaintiff did not advise the Court of the amendment of her bankruptcy filings, on October 4, 2005, this Court issued an order directing Tyler to show cause why the Defendant's motion should not be granted on the basis of judicial estoppel. Three days later, on October 10, 2005, Plaintiff amended her bankruptcy filings to include the instant action.

Plaintiff has offered no explanation for her failure to initially disclose her claims to the bankruptcy court, nor for her failure to so amend for ten months following notice of the issue in Defendant's motion for summary judgment. She states only that these failures were the result of inadvertence, and relying on the Sixth Circuit's decision in Eubanks v. CBSK Fin. Group, Inc., argues that judicial estoppel is an "inappropriate resolution" in such a situation. 385 F.3d 894, 898 (6th Cir. 2004). In Eubanks, the Sixth Circuit reversed a district court determination that the

14

plaintiffs' claims were barred by judicial estoppel despite their omission of a potential claim from their bankruptcy schedules. In reaching this determination, the court noted that

> . . . Plaintiffs made the court, and the Trustee, aware of the potential civil claim against Defendant before the bankruptcy action closed, although the claim was omitted from Plaintiffs' bankruptcy schedule form. Plaintiffs' counsel and the Trustee were in contact, with respect to the documentation regarding the claim against Defendant, prior to the filing of the Trustee's Final Report. When Plaintiffs' counsel could not confirm whether or not the Trustee intended to reconcile the civil claim through the bankruptcy proceeding, Plaintiffs attempted to resolve the issue through a court conference, which was eventually cancelled due to the filing of the Trustee's Final Report.
>
> \* \* \*
>
> The record established that Plaintiffs amended the bankruptcy schedules once, and attempted to amend it a second time, to finally place Defendant on the schedule as a creditor and potential asset. . . . Additionally, the record establishes that Plaintiffs put the court and the Trustee on notice through correspondence, motions, and status conference requests, thus supporting the argument that the claim's omission on the schedules was merely inadvertent, particularly since Plaintiffs' desire to pursue a liability claim against Defendant was a fact known to all parties involved.

Eubanks, 385 F.3d at 898-99. Based on these "constant affirmative actions" by the plaintiffs to inform the bankruptcy trustee and court of their claim, the Sixth Circuit concluded that the omission was merely inadvertent. Id. at 899 and n.2.

In contrast, Tyler has offered no explanation or actions from which this Court can infer the "clearly establish[ed] desire to apprise the court of the pending claim" found in Eubanks. Id. When Tyler filed her bankruptcy petition, she was aware of, yet failed to disclose, a then pending claim for $53 million.[17] A motive to conceal can be inferred from this fact alone, as "[b]y omitting the claims, [she] could keep any proceeds for herself and not have them become part of

---

[17] While Plaintiff originally filed this action pro se, she subsequently hired an attorney and was also represented by separate counsel in her bankruptcy petition. Tyler does not suggest that she was advised by either counsel that she should not include her pending claim against Fed Ex in the bankruptcy schedules.

15

the bankruptcy estate." Barger v. City of Cartersville, 348 F.3d 1289, 1296 (11th Cir. 2003) (inferring intent to manipulate from knowledge of discrimination claims and existence of a motive to conceal); see also Walker v. Delta Air Lines, Inc., No. Civ.A. 100CV0558-TWT, 2002 WL 32136202, at *4 (N.D. Ga. Aug. 1, 2002) ("[T]he desire to have a bankruptcy discharged is a motive for concealing a claim since having a potential lawsuit as an asset could dictate the outcome of a bankruptcy proceeding.").

Over the next three and one-half years, Tyler failed to take any significant action to demonstrate a lack of intent to conceal or mislead the bankruptcy court despite the existence of a motive. She made no self-initiated attempt to abide by her continuing duty to the bankruptcy court to amend her financial statements to include her claim against the Defendant. Further, upon notice of the basis of Fed Ex's judicial estoppel defense in January 2005, Tyler averred to this Court that she was working to correct her inadvertence, yet failed to file a motion with the bankruptcy court to amend her schedules until April 2005. Finally, after being granted leave to correct her non-disclosure, Plaintiff continued to play loose and fast with the courts by not filing amended schedules. Only after an order by this Court to show cause why the Defendant's motion for summary judgment should not be granted on the basis of judicial estoppel, did the Plaintiff come clean. Had the Court failed to inquire, there is no indication in the record that this fraud on the bankruptcy court would not have continued.

Plaintiff argues that the "application of judicial estoppel in this matter would be unduly harsh and inequitable because Ms. Tyler's bankruptcy proceeding has been amended to correct any deficiencies in her petition." (Pl."s Resp. Order Show Cause at 4.) However, as the Eleventh Circuit noted in Burnes,

[t]he success of our bankruptcy laws requires a debtor's full and honest disclosure.

16

> Allowing [plaintiff] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

Burnes, 291 F.3d at 1288; see also Chandler v. Samford Univ., 35 F.Supp.2d 861, 863 (N.D. Ala. 1999) ("Because the bankruptcy court relies on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized"). "Plaintiff has provided no affidavit or any other explanation that would negate the inference that the amendment of [her] bankruptcy petition was compelled by [this Court's order]." Walker, 2002 WL 32136202 at *4 (applying judicial estoppel to bar plaintiff's discrimination claim); but see Doughtie v. Ashland, No.03-2073, 2005 WL 1140736, at *4 (W.D. Tenn. May 12, 2005) (finding that the omission of plaintiff's claim was the result of inadvertence where affidavits established that he had informed his bankruptcy attorney of the claim prior to filing the petition and was not motivated by a desire to conceal.) Given the circumstances under which Plaintiff ultimately acquiesced to her duty to inform the bankruptcy court of her claim, the Court is not persuaded that Tyler's disclosure negates an intent to conceal. See Scoggins v. Arrow Trucking Co., 92 F. Supp.2d 1372, 1376 (S.D.Ga.2000) (holding that the plaintiff "should not be permitted to duck his bankruptcy court disclosure obligation, then "fess up" without consequence once exposed by his adversary. He knew of the facts giving rise to his inconsistent positions, and he had a motive to conceal this claim. That is enough."). Because Tyler had knowledge of her claim against the Defendant at the time she filed for bankruptcy; a motive to conceal the claim; and because she failed to offer any evidence from which the Court could infer a lack of intent to conceal, the Court finds that the plaintiff's omission was intentional and not the result of inadvertence. See Walker, 2002 WL

17

32136202 at 4.

Based on the evidence before it, the Court can reach no conclusion other than that the Plaintiff intended to disregard disclosure of this lawsuit in her bankruptcy proceeding, an action fatal to her claim in this case. Accordingly, the Defendant's motion for summary judgment is GRANTED and the Clerk of the Court is directed to enter judgment for the Defendant.

IT IS SO ORDERED this __1st__ day of November 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 115 in case 2:02-CV-02137 was distributed by fax, mail, or direct printing on November 3, 2005 to the parties listed.

---

Stuart B. Breakstone
BREAKSTONE & ASSOCIATES
200 Jefferson Ave.
Ste. #725
Memphis, TN 38103

Kathy D. Baker
BREAKSTONE & ASSOCIATES
200 Jefferson Ave.
Ste. #725
Memphis, TN 38103

Barak J. Babcock
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Rd.
Bldg. B, 3rd fl.
Memphis, TN 38125

Honorable J. Breen
US DISTRICT COURT